1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MOMENTUM COMMERCIAL                    No.  2:21–cv–0981–KJM–KJN PS
      FUNDING, LLC,
12                                            ORDER
                      Plaintiff,
13                                            (ECF No. 14)
              v.
14
      PROJECT STORM, LLC; VICTOR D.
15    CARRANZA,

16                    Defendants.

17

18          Presently pending before the court is plaintiff Momentum Commercial Funding, LLC's

19    motion for default judgment against defendants Project Storm, LLC, and Victor D. Carranza.[1]

20    (ECF No. 14.)  Defendants have not appeared in this action and failed to file an opposition to the

21    motion, despite an extension of time, and the motion was submitted without oral arguments

22    pursuant to Local Rule 230(g).  (ECF No. 16.)

23          Upon reviewing the complaint and plaintiff's motion, the court sees little difficulty with

24    granting the motion so as to hold defendants liable for the causes of action asserted against them.

25    However, the evidence provided appears insufficient to support plaintiff's requests for damages

26    ///

27    _____

28    [1]  This motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule
      of Civil Procedure 72, and Local Rule 302(c)(19).

                                                    1

1   and attorney's fees.  Accordingly, plaintiff is ordered to file a supplemental brief along with any

2   additional evidence to support its damages calculations and requested attorney's fees.

3   **Insufficient Evidence or Explanation of Damages**

4   Defendants' defaults in this case "establish[] their respective liabilities, but not the extent

5   of the damages."  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) ("The

6   general rule of law is that upon default the factual allegations of the complaint, except those

7   relating to the amount of damages, will be taken as true." (emphasis added)).  Plaintiff argues that

8   its damages are liquidated and capable of mathematical calculation under the terms of the

9   Equipment Lease Agreement ("Lease"), the breach of which forms the basis of this action.  (ECF

10   No. 14.1 at 13.)  See Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981) (default judgment for

11   money may be entered without hearing if "amount claimed is a liquidated sum or capable of

12   mathematical calculation").

13   This may well be so, but plaintiff's motion fails to explain the mathematical calculations

14   supporting certain damages figures requested.  The McCallum declaration to which plaintiff

15   directs the court for its damages explanation states the sums owed to plaintiff under the Lease.

16   (ECF No. 14.2 ¶ 13(a)-(c); see ECF No. 14.1 at 13.)  Ms. McCallum, plaintiff's

17   Finance/Operations Manager, avers that defendants first owe **"Rental payments in the sum of**

18   **$133,410.00,"** discounted to a present value of $128,074.46, citing Paragraph 7 of the Lease.

19   (ECF No. 14.2 ¶ 13(a).)  The Lease supports this type of discounted recovery in the event of

20   default (see ECF No. 1 at 8-9, Lease ¶¶ 7, 14-15), but the court cannot tell from the moving

21   papers how plaintiff arrived at $133,410.00 as the amount of rental payments outstanding on the

22   Lease.  The Lease payment history attached as Exhibit 10 is difficult to decipher and nowhere

23   reflects a total outstanding balance of $133,410.00 (or any obvious total outstanding balance at

24   all).[2]  (See ECF No. 14.2 at 38-39.)  Ms. McCallum further avers that defendants owe **"Late**

25   ---
[2] As best the court can tell, from June 14, 2019, through May 18, 2020, defendant Project Storm,
26   LLC, made Lease payments totaling $61,526.00 before defaulting.  (ECF No. 14.2 at 38 (adding
each entry labeled as "Payment").)  However, it is unclear from the face of the Lease or the
27   supporting papers what total amount Project Storm should have paid over the 48-month term of
the Lease, since the contract figures did not include "applicable tax" and it appears Project Storm
28   incurred late payment fees along the way before defaulting.

2

1  **charges totaling $2,170.50,"** citing Paragraph 19 of the Lease.  (<u>Id.</u> ¶ 13(c).)  Paragraph 19

2  supports plaintiff's recovery of late payment fees in general, but again the court cannot tell from

3  the moving papers how plaintiff calculated those fees as totaling the $2,170.50 requested here.

4  The court therefore orders plaintiff to submit a supplemental brief along with any

5  additional evidence to substantiate these two categories of damages sought.  While the other

6  requested damages appear sufficiently supported by the present record, the court encourages

7  plaintiff to substantiate all dollar amounts requested with the underlying mathematical

8  calculations and citations to the record.

9  **Attorney's Fees Issues**

10  Plaintiff also seeks to recover its attorney's fees in connection with collection efforts and

11  enforcement of defendants' respective obligations under three related agreements underlying this

12  action:  (i) the Lease between plaintiff and defendant Project Storm, LLC, (ii) the Security

13  Agreement entered between plaintiff and Project Storm securing plaintiff's interest in all of

14  Project Storm's personal property as collateral for the Lease, and (iii) the Continuing Guaranty

15  ("Guaranty") individually obligating defendant Victor Carranza to pay and perform if Project

16  Storm failed in any of its obligations under the Lease.  (ECF No. 14.1 at 7.)

17  The court requires plaintiff to supplement its request for attorney's fees to address two

18  problems with the current fee application.

19  *a)  Attorney's Fees Not Provided Under the Lease*

20  When state law governs a claim, it also governs the award of attorney's fees, both in

21  determining the right to fees and their method of calculation.  <u>Vizcaino v. Microsoft Corp.</u>, 290

22  F.3d 1043, 1047 (9th Cir. 2002); <u>Mangold v. California Pub. Utilities Comm'n</u>, 67 F.3d 1470,

23  1478 (9th Cir. 1995).  Because all of plaintiff's claims sound in breach of contract under

24  California state law, this court applies California law to the request for attorney's fees.

25  In California, "[u]nless authorized by statute or agreement, attorney's fees ordinarily are

26  not recoverable as costs."  <u>Reynolds Metals Co. v. Alperson</u>, 25 Cal. 3d 124, 127 (1979); <u>see</u>

27  <u>Mountain Air Enter. LLC v. Sundowner Towers, LLC</u>, 3 Cal. 5th 744, 751 (2017) ("Under the

28  American rule, each party to a lawsuit ordinarily pays its own attorney fees.").  Still, California

1    law specifically provides that "[i]n any action on a contract, where the contract specifically

2    provides that attorney's fees and costs, which are incurred to enforce that contract, shall be

3    awarded either to one of the parties or to the prevailing party, then the party who is determined to

4    be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in

5    addition to other costs."  Cal. Civ. Code § 1717.

6         Plaintiff argues that it is entitled to an award of attorney's fees under § 1717 because all

7    three agreements identified above (the Lease, the Security Agreement, and the Guaranty) provide

8    for attorney's fees connected to collection and enforcement efforts.  (ECF Nos. 14.1 at 7, 14.3

9    ¶ 6.)  Reviewing the portions of these agreements cited by plaintiff, the court agrees that the

10   Security Agreement and the Guaranty provide for attorney's fees as contemplated in § 1717.

11   However, the Lease itself does not "specifically provides that attorney's fees and costs, which are

12   incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing

13   party," as required to trigger an award under § 1717.

14        The only section of the Lease that plaintiff cites in support of its fees request is

15   Paragraph 13, entitled "INDEMNITY."  (See ECF Nos. 14.1 at 7, 14.3 ¶ 5.)  Paragraph 13 of the

16   Lease states in full:

17               13.  INDEMNITY.  Lessee will indemnify, defend and hold harmless
             Lessor against any liabilities, losses, claims, actions and expenses,
18           including court costs and legal expenses, incurred by Lessor relating
             to this lease or the Equipment, including claims of latent or other
19           defects, strict liability claims and claims for patent, trademark or
             copyright infringement or environmental remediation.  Each party
20           will give the other notice of any covered event promptly after
             learning thereof.
21

22   (ECF No. 1 at 9.)  Under California law, this is not language specifically providing for attorney's

23   fees incurred <u>to enforce the Lease contract</u> as between the parties to the contract.  Rather, it is an

24   indemnity provision, obligating the Lessee (defendant Project Storm) to indemnify the Lessor

25   (plaintiff) for losses—including legal expenses—incurred <u>in litigation with third parties</u>, related

26   to the contract or the equipment being leased.[3]

27   _____

28   [3] "Indemnity" is "the obligation resting on one party to make good a loss or damage another party
     has incurred."  Rossmoor Sanitation, Inc. v. Pylon, Inc., 13 Cal. 3d 622, 628 (1975).  "Indemnity

                                                    4

1    "The general rule is that including attorney's fees as an item of loss in a third party

2    indemnity provision does not constitute a provision for the award of attorney's fees in an action

3    on the contract itself which is required to trigger Civil Code § 1717." In re Zarate, 567 B.R. 176,

4    186 (Bankr. N.D. Cal. 2017) (citing Carr Bus. Enterprises, Inc. v. City of Chowchilla, 166 Cal.

5    App. 4th 14, 20 (Ct. App. 5th Dist. 2008) (in turn citing Myers Bldg. Indus., Ltd. v. Interface

6    Tech., Inc., 13 Cal. App. 4th 949, 969 (Ct. App. 2d Dist. 1993)).  There are exceptions to this rule

7    where the indemnity provision includes "express language for attorney's fees incurred in

8    enforcing [the] indemnity agreement." Alki Partners, LP v. DB Fund Servs., LLC, 4 Cal. App.

9    5th 574, 598 (Ct. App. 4th Dist. 2016) (citations omitted) (emphasis added); see Baldwin

10   Builders v. Coast Plastering Corp., 125 Cal. App. 4th 1339, 1342 (Ct. App. 4th Dist. 2005)

11   (holding that an indemnity provision authorized the recovery of attorneys' fees on an action on

12   the contract between the parties because it included express language that "[s]ubcontractor shall

13   pay all costs, including attorney's fees, incurred in enforcing this indemnity agreement' "

14   (emphasis added)); see also Suretec Ins. Co. v. BRC Const., Inc., 2013 WL 6199021, at *3 (E.D.

15   Cal. Nov. 27, 2013) (Mueller, J.) (courts approve fees only "where the contractual provision of an

16   indemnity agreement explicitly provides for attorneys' fees arising from the enforcement of the

17   contract itself" (citations omitted)).

18        Paragraph 13 of the Lease does not fit within these exceptions.  It expressly references

19   indemnification and uses the words "will indemnify" and "hold harmless," which are the key

20   indicators of a third-party indemnification provision.  See Alki Partners, 4 Cal. App. 5th at 600

21   ("The key indicator is an express reference to indemnification. A clause that contains the words

22   'indemnify' and 'hold harmless' generally obligates the indemnitor to reimburse the indemnitee

23   for any damages the indemnitee becomes obligated to pay third persons—that is, it relates to third

24   party claims, not attorney fees incurred in a breach of contract action between the parties to the

25   indemnity agreement itself."); see also Indigo Grp. USA, Inc. v. Polo Ralph Lauren Corp., 2014

26   WL 12573380, at *5 (C.D. Cal. Mar. 17, 2014) ("[U]se of the terms 'indemnify' and 'hold

27   _____

     generally refers to third party claims." Zalkind v. Ceradyne, Inc., 194 Cal. App. 4th 1010, 1024

28   (Ct. App. 4th Dist. 2011).

1    harmless' suggests that Exhibit 2 is an indemnification provision, rather than an intraparty

2    attorney's fees provision to which § 1717 applies."), aff'd, 749 F. App'x 639 (9th Cir. 2019).

3         As in Carr and Alki Partners, there is nothing in Paragraph 13 that extends the right to

4    recover attorney's fees to actions such as this one seeking to enforce the Lease itself.  The

5    provision for legal expenses "incurred by Lessor relating to this lease or the Equipment" is far too

6    broad to support an attorney's fees award under § 1717.  See Alki Partners, 4 Cal. App. 5th at 600

7    (discussing California cases where language providing for attorney's fees (a) "arising from any

8    cause or for any reason whatsoever" or (b) for "'any, all, and every claim' which arises out of 'the

9    performance of the contract'" could not support award of attorney's fees in breach-of-contract

10   action between the contracting parties).  The adjacent references to "claims of latent or other

11   defects, strict liability claims and claims for patent, trademark or copyright infringement or

12   environmental remediation" reinforces that Project Storm was agreeing to indemnify plaintiff for

13   its legal expenses from third-party actions.  (See ECF No. 1 at 9.)  If Paragraph 13 referred to

14   actions between the contracting parties, there would be no reason to include the closing clause

15   that "[e]ach party will give the other notice of any covered event promptly after learning thereof."

16   (See id.)

17        Plaintiff's supplemental brief shall explain what effect, if any, this finding has on its

18   request for an attorney's fees award in this action.  The court recognizes that the Security

19   Agreement between Project Storm and plaintiff does specifically provide for attorney's fees as

20   contemplated by § 1717; however, it is unclear whether the entirety of plaintiff's requested

21   attorney's fees were incurred "to enforce this Security Agreement" or to protect plaintiff's

22   "security interests . . . in the Collateral," as provided in the agreement.  (ECF No. 1 at 15, ¶ 8(E).)

23        Irrespective of plaintiff's answer to that question, the court is prepared to order an award

24   of attorney's fees from the individual defendant, Victor Carranza, based on the express attorney's

25   fees provision in the Guaranty he executed and which plaintiff's requested fees were certainly

26   incurred to enforce (in tandem with the Lease).  If plaintiff wishes for the fees award to be made

27   payable by both Mr. Carranza and Project Storm, however, it must justify the award from Project

28   Storm by reference to the Security Agreement alone—not the Lease.

1           **b)** ***Insufficient Showing of Prevailing Market Rates***

2           Finally, plaintiff has not met its burden to show that the attorney's fees it seeks are

3   reasonable.  See Gorman v. Tassajara Dev. Corp., 178 Cal. App. 4th 44, 98 (Ct. App. 6th Dist.

4   2009) (burden on party seeking fees).  "[T]he fee setting inquiry in California ordinarily begins

5   with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable

6   hourly rate."  PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1095 (2000).  Plaintiff requests hourly

7   rates of $395 per hour for two senior attorneys of the Los Angeles-based law firm of Frandzel

8   Robins Bloom & Csato, L.C, and $345 per hour for another attorney at the firm with 8 years in

9   practice at the time of this motion.  (ECF No. 14.2 at 44, 61; ECF No. 14.3 at 7, 10, 12.)  Plaintiff

10  provides materials demonstrating each attorney's experience and skill.  However, plaintiff omits

11  any information about the prevailing market rates for similarly situated attorneys engaged in

12  commercial litigation in the Sacramento division of the Eastern District of California.  See

13  PLCM, 22 Cal. 4th at 1095 (reasonable hourly rate is "that prevailing in the community for

14  similar work"); Pasternack v. McCullough, 65 Cal. App. 5th 1050, 1055, (Ct. App. 2d Dist.

15  2021), review denied (Sept. 15, 2021) ("To determine the reasonable hourly rate, courts consider

16  the rate prevailing in the community for similar work.").

17          All plaintiff provides is a copy of the "Laffey Matrix," the use of which the District Judge

18  assigned to this case has previously found "improper under California law."  (See ECF No. 14.3

19  at 5, 16-17.)  Animal Blood Bank, Inc. v. Hale, 2013 WL 12305504, at *1 (E.D. Cal. Aug. 27,

20  2013) (Mueller, J.).  "The Eastern District has repeatedly declined to adopt the Laffey matrix, as

21  it only surveys prevailing rates in the Washington, D.C. legal community and does not directly

22  correlate to hourly rates for attorneys and paralegals in other parts of the country."  Cabardo v.

23  Patacsil, 2022 WL 956951, at *3 (E.D. Cal. Mar. 30, 2022) (footnote omitted).  Likewise, the

24  Ninth Circuit has questioned the matrix's application "in a legal market 3,000 miles away."

25  Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010).

26          California courts do not rule out the use of the Laffey Matrix.  Limon v. Dep't of Fin.,

27  2019 WL 517673, at *9 (Cal. Ct. App. Feb. 11, 2019) (unpub.) ("In California, while a trial court

28  is not 'required to follow the Laffey Matrix' in setting reasonable hourly rates, neither is it an

1    abuse of discretion to do so."  (quoting <u>Syers Properties III, Inc. v. Rankin</u>, 226 Cal. App. 4th

2    691, 702 (Ct. App. 1st Dist. 2014), and citing <u>Nemecek & Cole v. Horn</u>, 208 Cal. App. 4th 641,

3    650-51 (Ct. App. 2d Dist. 2012)).  However, if plaintiff's counsel intends to rely exclusively on

4    the Laffey Matrix in this case, they must at least provide some "rational mechanism" for adjusting

5    the matrix rates to the Sacramento market.  <u>See</u> <u>Trujillo v. Singh</u>, 2017 WL 1831941, at *2 (E.D.

6    Cal. May 8, 2017) (accepting Laffey Matrix with rates adjusted to local market based on Bureau

7    of Labor Statistics wage estimates).

8       The safer and preferred route, however, would be for plaintiff's counsel to provide

9    declarations demonstrating how their requested rates are within the ranges normally charged for

10    similar work in Sacramento.[4]

**ORDER**

12       Accordingly, IT IS HEREBY ORDERED that:

13    1.  Within 21 days of the date of entry of this order, plaintiff shall file a supplemental brief

14        along with any additional evidence to support its damages calculations and requested

15        attorney's fees;

16    2.  Once plaintiff files its supplemental brief, the court will rule on the pending motion for

17        default judgment; and

18    3.  Plaintiff shall forthwith serve a copy of this order on defendants by U.S. mail at their last-

19        known address(es).

20    Dated:  May 2, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

mome.0981

---

26    [4]  The court notes a recent case finding $300 per hour to be a reasonable rate for a Sacramento attorney with over 40 years in practice and a specialty in complex business litigation.  <u>Roth</u>

27    <u>Grading, Inc. v. Martin Bros. Constr.</u>, --- F. Supp. 3d ----, 2022 WL 411425, at *5 (E.D. Cal. Feb. 10, 2022) (Mueller, J.).  Plaintiff's counsel is free to adjust their requested rates in the

28    supplemental briefing to match what counsel determines to be the applicable prevailing range.

8