UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOMENTUM COMMERCIAL FUNDING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PROJECT STORM, LLC; VICTOR D. CARRANZA,<br><br>Defendants. | No. 2:21–cv–0981–KJM–KJN<br><br>ORDER & FINDINGS AND RECOMMENDATIONS<br><br>(ECF No. 14) |

Presently pending before the court is plaintiff Momentum Commercial Funding, LLC's motion for default judgment against defendants Project Storm, LLC, and Victor D. Carranza.[1] (ECF No. 14.) Defendants have not appeared in this action and failed to file an opposition to the motion, despite an extension of time, and the motion was submitted without oral arguments pursuant to Local Rule 230(g). (ECF No. 16.) As ordered by the court, plaintiff filed supplemental declarations to substantiate its requests for damages and attorney's fees. (ECF Nos. 19, 19.1.) For the following reasons, the court recommends that plaintiff's motion for default judgment be GRANTED.

///

---

[1] This motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Local Rule 302(c)(19).

1

I. **BACKGROUND**

Plaintiff initiated this action on June 2, 2021, asserting causes of action for (1) breach of an equipment finance agreement, (2) breach of guaranty, and (3) claim and delivery. (ECF No. 1.) On July 7, 2021, both defendants were personally served with copies of the complaint and summons. (ECF Nos. 6, 7.) Defendants failed to answer or otherwise respond, and on July 30, 2021, at plaintiff's request, the Clerk of the Court entered their defaults. (See ECF Nos. 8, 9.) On October 22, 2021, plaintiff filed the instant motion for default judgment. (ECF No. 14.) Defendants did not respond to the motion. The court vacated the December 2, 2021 hearing and provided defendants an additional opportunity to oppose. (ECF No. 16.) As ordered by the court, plaintiff served a copy of the order on defendants by mail on November 23, 2021. (ECF No. 17.) Defendants still have not opposed plaintiff's motion or otherwise appeared in this action.

On May 3, 2022, the undersigned issued an order for plaintiff to provide supplemental briefing and additional evidence to support its damages calculations and requested attorney's fees. (ECF No. 18.) Plaintiff did so, providing supplemental declarations by its counsel and its Finance/Operations Manager. (ECF Nos. 19, 19.1.) Based on this supplemental evidence, the court now recommends granting the motion, and issuing judgment in plaintiff's favor along with damages and attorney's fees.

This action arose in connection with three agreements entered on or about June 1, 2019. First, plaintiff entered into an Equipment Lease Agreement ("Lease") with defendant Project Storm, whereby plaintiff leased to Project Storm a 2000 Bandit 4680 Beast V-12 3412 (an industrial horizontal tree grinder, hereafter "the Equipment"). (ECF No. 1 ("Complaint") ¶ 8, Ex. 1.) Second, plaintiff and Project Storm entered a Security Agreement securing plaintiff's interest in all of Project Storm's personal property as collateral for the Lease. (Id. ¶ 10, Ex. 2.) Third, Project Storm's managing member, defendant Victor Carranza, executed a Continuing Guaranty ("Guaranty") individually obligating himself to pay and perform if Project Storm failed

////

////

in any of its obligations under the Lease.[2] (Id. ¶ 18, Ex. 8.)

As alleged in the complaint and shown in the attachments, the four-year Lease obligated Project Storm to make one initial payment of $12,025.00 followed by 47 monthly payments of $4,148.73, plus applicable taxes. (Id. ¶¶ 8, 13; id. at 8.) The Lease provided an option for Project Storm to acquire the Equipment at the end of the Lease term for its residual value of $16,390.00 plus tax.[3] (Id. ¶ 9; id. at 8.) Otherwise, at the end of the Lease term, or upon default, Project Storm was to return the Equipment to plaintiff in good condition. (Id. ¶¶ 8-9; see Lease ¶ 8.)

Project Storm failed to make its monthly payments due for May 2020 and each month thereafter. (Id. ¶ 13.) Demand was made on both Project Storm and Carranza for payment of all sums due, but no sums were paid. (Id. ¶¶ 13, 20.) Based on this default, plaintiff repossessed the Equipment and plans to sell it in a commercially reasonable manner to mitigate its damages. (Id. ¶¶ 13, 15.) "Upon repossession of the Equipment it was determined that a major component of the Equipment was missing, which drastically reduces its value because of [Project Storm]'s removal of this component, making the cost to replace it significant." (Id. ¶ 13.) Demand was made to deliver possession of all of Project Storm's personal property, which constitutes collateral under the lien created by the Security Agreement. (Id. ¶¶ 10, 23.) However, defendants fail and refuse to do this, either. (Id. ¶ 23.)

Accordingly, the complaint alleges the following sums are now due: (a) unpaid rental payments totaling $133,410.90, discounted to present value at 4% with respect to unearned interest (see Lease ¶ 7); (b) the $16,390.00 residual value of the Equipment, plus tax; (c) late charges of $2,170.50 (see Lease ¶ 19); (d) actual repossession costs of $2,245.00; and (e) actual transportation costs of $10,000.[4] (Complaint ¶ 14.)

---

[2] Plaintiff is an LLC based in California; Project Storm is an LLC based in Texas; and Carranza is also a citizen of Texas. (Complaint ¶¶ 1-3.)

[3] Paragraph 9 of the complaint states the residual value was $16,390.93, but elsewhere in the complaint and on the Lease itself the value is listed as $16,390.00.

[4] Plaintiff attaches to the default judgment motion invoices for the $2,245 to move the Equipment to the transport lot and the $10,000 to then transport it from Houston, TX to Roseville, CA. (ECF No. 14.2 at 35-36.)

3

The complaint brings claims for: (1) breach of contract against Project Storm, based on the Lease; (2) breach of guaranty against Carranza, based on the Guaranty; and (3) claim and delivery against both defendants, seeking immediate possession of all collateral pursuant to the Security Agreement and the breach of the Lease. The complaint seeks the above amounts in damages, judgment for claim and delivery, costs, and attorney's fees. (Id. at 5-6.)

The instant motion for default judgment, as supplemented by the additional declarations, requests judgment on all claims, $160,232.14 in damages,[5] $7,937.50 in attorney's fees incurred through the filing of this motion, $2,370.00 in additional attorney's fees for preparing the supplemental declarations, and $2,009.23 in costs. (ECF Nos. 14.1 at 7, 14.3 ¶ 5, 14.5, 19.1 ¶ 8.)

## II. **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

---

[5] This is the total sum of the amount of damages pled in the Complaint. The original declaration of plaintiff's Finance/Operations Manager contained a mathematical error when it calculated the total damages as $143,842.12. (ECF No. 14.2 ¶ 13-14.) The supplemental declaration notes this error and corrects the total to $160,232.14. (ECF No. 19.1 ¶ 8.) The undersigned recommends awarding the higher amount, as that is the actual total of the amount of damages incurred.

4

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim"). A party's default does not establish the amount of damages. Geddes, 559 F.2d at 560.

## III.  DISCUSSION

### A. Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors

The undersigned finds that the weight of the Eitel factors entitles plaintiff to default judgment on all claims asserted.

1. Plaintiff is prejudiced by defendant's non-responsiveness.

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Absent entry of default judgment, plaintiff would be without other recourse to recover its damages and collateral from defendants. Accordingly, the first Eitel factor favors the entry of a default judgment.

2. Plaintiff's substantive claims are meritorious and sufficiently pleaded in the FAC.

The court considers the second and third factors—the merits of plaintiff's substantive claims and the sufficiency of the complaint—together due to the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim for relief. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175. Here, brings three

claims, which the court considers in turn.

                 a.         *Breach of Contract Claim*

Under California law,[6] the elements of a claim for breach of contract are: "(1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." Richman v. Hartley, 224 Cal. App. 4th 1182, 1186 (2014).

The complaint adequately alleges each element of a breach of contract claim against defendant Project Storm. Plaintiff asserts that it entered into the Lease with Project Storm, attaching to the complaint a copy of the Lease. (ECF No. 1, Ex. 1.) Plaintiff alleges that it performed its obligations under the Lease, and that Project Storm breached the Lease by failing to make timely payments as required. Finally, plaintiff alleges damages in the form of (at minimum) all remaining unpaid rental payments, which became due and owing under the Lease's "loss and damage," "surrender," "default," and "remedies" clauses following defendant's breach. (ECF No. 1 at 8-9, Lease ¶¶ 7, 8, 14, 15.) Project Storm's failure to appear and defend constitutes an admission of these allegations, except as to the amount of damages, which the court discusses below.

                 b.         *Breach of Guaranty Claim*

The elements of a breach of guaranty claim are the same as the elements of a breach of contract claim.[7] See Bank of the Sierra v. Kallis, 2006 WL 3513568, *7 (E.D. Cal. Dec. 6, 2006); see also Blue Growth Holdings Ltd. v. Mainstreet Limited Ventures, LLC, No. CV 13–1452 CRB, 2013 WL 4758009, *2 (N.D. Cal. Sept. 4, 2013) (noting that by signing a guarantee, the guarantor entered into a contract with plaintiff).

In addition to the allegations regarding default on the Lease, plaintiff further alleges that defendant Carranza executed the Guaranty in which he obligated himself, personally, to pay all sums due under the Lease if not paid by Project Storm. (ECF No. 1, Ex. 8.) Specifically,

---

[6] The Lease provides that it is governed by California law. (ECF No. 1 at 9, Lease ¶ 22.)

[7] The Guaranty likewise provides that it is governed by California law. (ECF No. 1 at 30, Guaranty ¶ 13.)

Carranza "unconditionally agree[d]" that following Project Storm's failure to perform under the Lease, he would "pay to [plaintiff] or its order, on demand, . . . an amount equal to the amount of the Obligations not paid and to otherwise perform any Obligations not performed." (Guaranty ¶ 2.) Plaintiff adequately alleges that Project Storm failed in its obligations under the Lease; that plaintiff then made demands on both Project Storm and Carranza to pay and perform; and Carranza failed to pay the amounts owing or return the Equipment, resulting in the same damages outlined above.

Accordingly, plaintiff sufficiently states a claim for breach of guaranty.

### c. Claim and Delivery (Replevin)

"Claim and delivery," also known as replevin, is "a method of recovering property that is wrongfully being withheld by another." Trans Pacific Nat. Bank v. UBS AG, 2010 WL 2354165, at *4 (N.D. Cal. June 9, 2010); see Penske Truck Leasing Co., L.P. v. I-10 Towing & Recovery, Inc., 2019 WL 6736905, at *3 (C.D. Cal. Mar. 11, 2019). "Claim and delivery is not a separate action but is a remedy that permits a prevailing party to recover both specific property and incidental damages." Xerox Corp. v. AC Square, Inc., 2016 WL 5898652, at *3 (N.D. Cal. Sept. 1, 2016). To be entitled to this remedy, the plaintiff "must show (1) that it has a right to possess the equipment in question and (2) that [the defendant] is in wrongful possession of the equipment." Xerox Corp. v. CBFS, Inc., 2013 WL 12203040, at *4 (C.D. Cal. May 23, 2013).

As just found, plaintiff should prevail on each of the above claims for breach of the Lease and breach of the Guaranty. See Xerox Corp. v. AC Square, Inc., 2016 WL 1237828, at *3 (N.D. Cal. Mar. 30, 2016) ("Since Plaintiff adequately pled breach of contract, it has sufficiently stated claim and delivery for all contracts concerning leased products.) Moreover, under the Security Agreement executed in conjunction with the Lease, plaintiff acquired a blanket security interest in "all of the personal property of [Project Storm], wherever located . . . including but not limited to, accounts, . . . , goods, inventory, [and] equipment." (Complaint at 12.) Plaintiff then perfected this blanket lien by filing UCC financing statements. (Complaint, Ex. 3.) The Security Agreement gives plaintiff the right, upon any default by Project Storm, to require the lessee to deliver the collateral, or to enter the lessee's premises and take possession of the collateral.

(Security Agreement ¶ 6(C) & (D).)

These terms show that plaintiff has a right to the collateral covered by the Security Agreement, and that because Project Storm defaulted under the Lease, its failure to comply with plaintiff's subsequent requests for the collateral—to mitigate plaintiff's damages—amounts to wrongful possession of whatever collateral Project Storm possesses, up to the amount of the damages for the breach. Accordingly, plaintiff sufficiently states a claim for claim and delivery, as a general matter.[8]

Therefore, the second and third Eitel factors favor the entry of a default judgment on all three claims.

### 3. The amount of damages is proportional to plaintiff's harm.

Next, the court considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see, e.g., Philip Morris, 219 F.R.D. at 500. In this case, plaintiff seeks default judgment against defendants, jointly and severally, in the amount of $160,232.14; $10,307.50 in attorney's fees; and $2,009.23 in costs. Although the court more closely scrutinizes the damages and requested attorney's fees and costs below, the court does not find the overall sum of money at stake so large or excessive as to militate against the entry of default judgment. Therefore, this factor also favors the entry of a default judgment.

### 4. The material facts are not in dispute.

Because the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris, 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As such, the fifth Eitel factor favors a default judgment.

---

[8] As discussed below, however, plaintiff does not sufficiently identify what collateral defendants possess so as to warrant an actual judgment for repossession.

5. <u>The court sees no excusable neglect.</u>

Here, there is no indication in the record that defendants' default was due to excusable neglect.  <u>See</u> Pepsi Co, Inc., 238 F. Supp. 2d at 1177.  Defendants received ample notice of this lawsuit.  Both defendant Carranza and his defendant company, Project Storm, were personally served with the summons and complaint.  (<u>See</u> ECF Nos. 4, 19.7 at 3.)  Plaintiff also served defendants, by mail, with this motion for default judgment, the supplemental declarations in support, and the court's order providing an additional opportunity to respond to the default.  (<u>See</u> ECF Nos. 14.6, 17, 19 at 8, 19.1 at 6.)  Defendants' failure to respond therefore is not likely due to excusable neglect.  Accordingly, this <u>Eitel</u> factor favors the entry of a default judgment.

6. <u>Other factors outweigh the policy favoring disposition on the merits.</u>

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472.  However, district courts conclude with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see, e.g.</u>, <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Here, although the undersigned acknowledges the policy in favor of decisions on the merits—and consistent with existing policy would prefer this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

In sum, after considering and weighing all the <u>Eitel</u> factors, the court concludes that plaintiff is entitled to a default judgment against defendants, and recommends a default judgment be entered.

**B. Terms of the Judgment to be Entered**

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  Plaintiff seeks (1) judgment for possession of the "missing component," (2) compensatory damages, and (3) attorney's fees and costs.  (ECF No. 14.1 at 7, 12.)

1. <u>Judgment for Possession based on Security Interest</u>

In this motion, plaintiff seeks "a judgment for possession of the missing component," that it believes defendants removed from the Equipment before repossession.  (ECF No. 14.1 at 12.)

9

This is the only specific item of collateral under the Security Agreement that plaintiff presently knows to exist.  (Id., stating "Plaintiff also has no idea at this time what other personal property assets may exist in the way of equipment, inventory, accounts receivable or other items of personal property.")  It does not appear that plaintiff is seeking a judgment for possession of any other collateral, though it is hard to tell.

It is difficult to tell what relief plaintiff seeks in terms of a claim and delivery remedy because the only references are the above quoted phrase somewhat buried within plaintiff's brief (ECF No. 14.1 at 12) and a statement of entitlement to "Judgment for Claim and Delivery . . . with respect to the Collateral" at the end of one of the declarations in support (ECF No. 14.2 ¶ 21).  The proposed order attached to the motion does not mention any judgment of possession whatsoever.

To the extent plaintiff seeks a writ of possession for the "missing component" under Cal. Civ. Proc. Code § 512.010 (part of California's claim and delivery law), the present motion does not include enough information to grant one.  See § 512.010(b) (requiring, among other things, a "particular description of the property and a statement of its value" and the believed "location of the property").  Neither the complaint nor the present motion gives any description of what this component is—other than something "major," without which the Equipment's value is much reduced.[9]  (Complaint ¶ 13.)

Although it does appear that plaintiff has an entitlement to the "missing component," given that it was part of the leased Equipment, the undersigned cannot recommend issuing a judgment for possession of such a non-specific item.  Plaintiff is invited to file objections to these findings and recommendations providing (a) greater detail about the nature and suspected whereabouts of the missing component(s), (b) an explanation of what judgment of possession is being sought, (c) the authority for including such a judgment of possession, and (d) proposed language for such a judgment.  Upon receipt of this information within the period for objections, the undersigned will consider reissuing modified findings and recommendations incorporating a

---

[9] Indeed, it appears that plaintiff may be referring to multiple components, given the phrasing in the supporting declaration.  (See ECF No. 14.2 ¶ 18, referring to "major components," plural.)

judgment for possession.

### 2. Compensatory Damages

As modified by plaintiff's supplemental declaration by its Finance/Operations Manager Lauri McCallum, plaintiff is seeking $160,232.14 in liquidated damages against both defendants, jointly and severally, for the breach of contract and breach of guaranty claims. (ECF No. 19.1 ("Supp. McCallum Decl.") ¶ 8; ECF No. 14.2 ("McCallum Decl.") ¶ 20; ECF No. 14.1 at 13.) Plaintiff states that once it sells the Equipment, it will credit defendants with the net proceeds received. (ECF No. 14.1 at 13.)

As recited at the outset, the complaint alleges unpaid rental payments totaling $133,410.90, discounted to present value at 4% with respect to unearned interest. (Complaint ¶ 14.) In Ms. McCallum's original declaration in support of this motion, she averred that defendants owed plaintiff that same $133,410.90 in rental payments, and that the discounted amount was $128,074.46. (McCallum Decl. ¶ 13.) The court ordered supplemental briefing on the damages amount because the court could not tell from the moving papers how plaintiff arrived at the $133,410.90 figure. (ECF No. 18 at 2.) Ms. McCallum's supplemental declaration explains that plaintiff made 10 out of the contractual 48 monthly payments, leaving 38 unpaid rental payments. (Supp. McCallum Decl. ¶ 7.) From that, Ms. McCallum concludes, without explanation that "[t]he gross receivable is $157,651.74." (Id.) The undersigned independently gleaned that this dollar amount is the product of multiplying the contractual $4,148.73 monthly payments amount by the 38 unmade payments. (See ECF No. 1 at 8.) According to Ms. McCallum's financial calculator, the present value of $157,651.74 discounted at 4% for unearned interest is $147,844. (Supp. McCallum Decl. ¶ 7.) As Ms. McCallum recognizes, both amounts are substantially more than what was pled in the complaint and repeated in the original declaration with respect to the unpaid rental payments. (Id.) However, plaintiff still requests judgment only for the (lesser) total sum of the amounts originally pled and averred.[10] (Id. ¶ 8.)

---

[10] In fact, plaintiff is willing to "live with" an even lower amount of damages based on the mathematical error in the original declaration that led Ms. McCallum to believe the total of the itemized damages figures came to $143,842.12. (Supp. McCallum Decl. ¶¶ 7-8.) The court does not find it necessary to reduce the damages award when the amounts listed in fact total

11

The court finds the supplemental explanation of the unpaid rental payments calculation sufficient to justify awarding at least the $128,074.46 in damages sought for those lost payments.

The balance of the damages sought are for (a) $16,390.00 in the contracted residual value of the Equipment plus tax, which equals $17,742.18; (b) $2,170.50 in charges for late payments; (c) $2,245.00 in repossession fees; and (d) $10,000 in transportation fees for moving the Equipment from Texas to California. (McCallum Decl. ¶ 13.) When added to $128,074.46, these amounts total $160,232.14 and are supported by Ms. McCallum's declarations and attachments, as well as the Lease provisions. (McCallum Decl. ¶ 13; McCallum Decl., Ex. 9 (repossession and transportation invoices); Supp. McCallum Decl. ¶¶ 7-8 (all); id. ¶ 5 (late charges); Lease ¶ 19 (late charges).) Moreover, these damages should be awarded against Project Storm and Mr. Carranza, jointly and severally, because Mr. Carranza guaranteed payment of these amounts under the Guaranty.

### a.    Future Mitigation

Any judgment for compensatory damages should be made subject to plaintiff being ordered to apply the proceeds from any sale or re-lease of the Equipment to decrease the amount owed by defendants, reducing defendants' indebtedness under the judgment. Plaintiff agrees that "[i]f and when [it] sells, leases or otherwise disposes of the Equipment it will give Defendants credit for the net sums received by way of Partial Satisfaction of Judgment." (McCallum Decl. ¶ 18.)

Accordingly, the court should award damages in the amount of $160,232.14, for which defendants are jointly and severally liable, subject to future proceeds from mitigation efforts.

### 3.    Attorney's Fees and Costs

Lastly, plaintiff requests attorney's fees and costs incurred in bringing this suit.

### a.    Availability of Award of Fees and Costs

Under California law,[11] reasonable attorney's fees and costs are available to the prevailing

---

$160,232.14, and defendants were served with the supplemental declaration correcting the prior math error.

[11] When state law governs a claim, it also governs the award of attorney's fees, both in

party in a contract action if the contract specifically provides for such an award. Cal. Civ. Code § 1717. Plaintiff's counsel's original declaration in support of a fee award did not direct the court to a provision in the Lease that "specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party," as required to trigger an award under § 1717. (See ECF No. 18 at 4-6.) Plaintiff's counsel cited only an indemnity provision obligating Project Storm to cover plaintiff's legal expenses incurred in litigation with third parties related to the Lease or the Equipment. (See ECF No. 14.3 ("Alper Decl.") ¶ 5, citing Lease paragraph 13; ECF No. 18 at 4, discussing nature of Lease paragraph 13.)

By contrast, both the Guaranty and the Security Agreement do contain traditional attorney's fees provisions. Paragraph 8(E) of the Security Agreement, which applies to Project Storm as the lessee, states: "In the event of any measure taken by Lessor after Lessee's default to enforce this Security Agreement or to protect the security interests of the Lessor in the Collateral, Lessee agrees to pay all costs and expenses upon Lessor's demand . . . ." (ECF No. 1 at 15, specifying that "[c]osts and expenses include . . . all court costs" as well as "Lessor's attorney's fees and legal expense.") Paragraph 2 of the Guaranty, which applies to Carranza, contains a similar provision wherein Carranza "agree[d] to pay all costs and expenses, including, but not limited to, reasonable attorney fees . . . incurred by Lessor/Creditor" in connection with administering or enforcing the Lease. (Id. at 28.)

Thus, it was and is clearly proper to order Mr. Carranza to pay plaintiff's attorney's fees incurred in this lawsuit. (See ECF No. 18 at 6.) However, the court ordered plaintiff's counsel to provide supplemental briefing on whether Project Storm could be ordered to pay those attorney's fees as well, based on the Security Agreement alone—given the apparent absence of an attorney's fees provision in the Lease. (Id.)

---

determining the right to fees and their method of calculation. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002); Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995). Because all of plaintiff's claims sound in breach of contract under California state law, this court applies California law to the request for attorney's fees.

13

Plaintiff's counsel's supplemental declaration newly calls the court's attention to paragraph 15 of the Lease as providing for coverage of costs and expenses. (ECF No. 19 ("Supp. Alper Decl.") ¶ 15.) Paragraph 15, entitled "Remedies," indeed contains in its midst a statement that "Lessee will also pay Lessor all costs and expenses not offset against the proceeds of sale of any Equipment incurred by Lessor in enforcing the lease, including those incurred by using Lessor's salaried employees and those prior to filing of an action or in connection with a dismissed action." (ECF No. 1 at 9.)

Without a reference to "attorney's fees" therein, it is difficult to conclude that Lease paragraph 15 "specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party." See Cal. Civ. Code § 1717. Nevertheless, the court need not decide whether that paragraph of the Lease is sufficient to hold Project Storm liable for plaintiff's attorney's fees because the Security Agreement's attorney's fees provision does the job on its own.

The court agrees with plaintiff's counsel's supplemental explanation that this action was filed not solely for damages for breach of contract but also for claim and delivery of Project Storm's personal property/collateral under the Security Agreement. (Supp. Alper Decl. ¶ 17.) Because this action was filed in part "to enforce this Security Agreement or to protect the security interests of the Lessor in the Collateral," paragraph 8(E) of the Security Agreement applies—thereby triggering Project Storm's obligation to pay all costs and expenses, including "all court costs" as well as "Lessor's attorney's fees and legal expense." (See ECF No. 1 at 15.) Even if the court ultimately does not award actual judgment of possession (due to the issues raised above), this action was nevertheless filed in furtherance of plaintiff's security interests in the collateral covered by the Security Agreement.

Therefore, both defendants should be required to pay plaintiff's reasonable attorney's fees and litigation costs.

   b. *Award of Costs*

Plaintiff seeks costs in the amount of $2,009.23, which comprises filing fees and service

of process costs.[12] (Alper Decl. ¶ 7; McCollum Decl. ¶ 16.) Plaintiff's counsel explains that the service costs are high because defendants were hard to locate and serve. (Alper Decl. ¶ 4.) The invoices attached to the declarations substantiate that these are recoverable costs, and the undersigned finds them reasonable in light of the repeated service attempts required. Accordingly, the court should award $2,009.23 in litigation costs, for which both defendants are jointly and severally liable.

          *c.*     *Award of Attorney's Fees*

Plaintiff seeks $7,937.50 in attorney's fees incurred up through the filing of this motion, plus $2,370.00 in additional attorney's fees for preparing responses to the undersigned's order for supplemental briefing. (McCallum Decl. ¶ 16; Supp. Alper Decl. ¶ 19.)

Courts calculate attorney's fee awards using the lodestar method, where the "lodestar" amount is the sum of the number of hours reasonably expended on the matter multiplied by a reasonable hourly rate. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1146–48 (9th Cir. 2001). The party seeking attorney's fees bears the burden of producing sufficient evidence that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); see Pasternack v. McCullough, 65 Cal. App. 5th 1050, 1055 (2d Dist. 2021) ("To determine the reasonable hourly rate, courts consider the rate prevailing in the community for similar work.").

Plaintiff requests the following hourly rates for its counsel at the Los Angeles-based law firm of Frandzel Robins Bloom & Csato, L.C.: $395 per hour for lead counsel Andrew Alper, who has practiced for 42 years and specializes in representing equipment lessors and other creditors; $395 per hour for senior attorney Bruce Poltrock who has practiced for 30 years representing creditors in commercial litigation; and $345 per hour for Gerrick Warrington, who had 8 years in practice at the time of this motion. (ECF No. 14.2 at 44, 61; ECF No. 14.3 at 7, 10,

---

[12] Plaintiff's counsel lists the amount of costs as $2,009.25, while Ms. McCallum lists the amount as $2,009.23. The undersigned recommends awarding the $2,009.23 amount listed in plaintiff's brief and in the proposed order.

12; Alper Decl. ¶ 11; Supp. Alper Decl. ¶ 3.) With the motion, counsel provided materials demonstrating each attorney's experience and skill; but the only evidence regarding the prevailing rates in the community was a copy of the "Laffey Matrix," which is widely found insufficient in this district without some mechanism for adjusting its Washington, D.C., rates to the local market. Therefore, the undersigned ordered supplemental briefing on how the requested hourly rates compare to the prevailing market rates for similarly situated attorneys engaged in commercial litigation in the Sacramento division of the Eastern District of California. (ECF No. 18 at 7-8.)

In his supplemental declaration, Mr. Alper provides comparative hourly rates charged by attorneys who practice in the Eastern District of California Bankruptcy Court, many of whom he knows to be similarly situated to himself in terms of experience and practice area. (Supp. Alper Decl. ¶¶ 7-12.) The cited rates for attorneys with 30-plus years in practice range from $435 per hour to $600 per hour. (Id.) The court is satisfied that, based on this comparison, the $395 hourly rate requested for Mr. Alper and Mr. Poltrock is reasonable. See also TBK Bank, SSB v. Singh, 2018 WL 1064357, at *8 (E.D. Cal. Feb. 23, 2018) (determining $400 per hour to be a reasonable rate for Mr. Alper in Fresno division), report and recommendation adopted, 2018 WL 3055890 (E.D. Cal. Mar. 21, 2018).

Mr. Alper does not provide comparator rates for Mr. Warrington, whose experience—though significant, at 8 years—falls below the ranges of the bankruptcy attorneys discussed. Nevertheless, based on the TBK Bank case just cited, the court finds $345 to be a reasonable hourly rate for Mr. Warrington, given that he was awarded $300 per hour four years ago in the Fresno division, where market rates are typically slightly lower than those in the Sacramento division. See 2018 WL 1064357, at *8.

For services provided through the filing of this motion, plaintiff requests fees to compensate 8.2 hours of work by Mr. Alper, 2.2 hours by Mr. Poltrock, and 11.1 hours by Mr. Warrington.[13] (McCallum Decl., Ex. 11.) Having reviewed the description of tasks

---

[13] In the future, counsel would do well to summarize in a supporting declaration the rates and number of hours being sought for each attorney to save the court from having to compile this information from attached itemized invoices that are not organized by billing attorney.

performed, the court finds these hours reasonable and recommends awarding the full originally requested attorney's fees of $7,937.50 (8.2 hours x $395 per hour = $3,239 for Mr. Alper; 2.2 hours x $395 per hour = $869 for Mr. Poltrock; and 11.1 hours x $345 per hour = $3,829.50 for Mr. Warrington).

The undersigned does not recommend awarding the additional $2,370 in attorney's fees for the time Mr. Alper spent responding to the order for supplemental briefing. (See Supp. Alper Decl. ¶ 19.) It would have saved both the court and counsel significant time if the original motion had been accompanied by adequate explanation of the contract damages and reasonableness of the hourly rates being sought. The court should not add to counsel's fee award for the extra time required as a result of not doing so originally.

In sum, the court should award attorney's fees of $7,937.50 and costs of $2,009.23, for a total of $9,946.73.

## **RECOMMENDATIONS**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 14) be GRANTED;
2. Judgment in the amount of $160,232.14 be entered in favor of plaintiff and against defendants Project Storm, LLC, and Victor Carranza, jointly and severally;
3. Plaintiff be ordered to apply the proceeds from the sale or other disposition of the subject Equipment to the above amount and submit a partial satisfaction of judgment, reducing the defendants' indebtedness under the judgment;
4. Plaintiff be awarded attorneys' fees and costs in the amount of $9,946.73, to be paid by defendants Project Storm, LLC, and Victor Carranza, jointly and severally; and
5. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**ORDER**

IT IS ALSO HEREBY ORDERED that plaintiff shall forthwith serve a copy of this order and findings and recommendations on defendants by U.S. mail at their last-known address(es).

Dated: July 18, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

mome.0981